660 So.2d 942 (1995)
STATE of Louisiana
v.
Perry D. JOHNSON and Charles DiBartolo.
No. 94-KA-1170.
Court of Appeal of Louisiana, Fourth Circuit.
August 23, 1995.
*944 Harry F. Connick, District Attorney, Susan M. Erlanger, Assistant District Attorney, Stacy Smith, Law Clerk, New Orleans, for plaintiff/appellee.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendants/appellants.
Before CIACCIO, ARMSTRONG and LANDRIEU, JJ.
ARMSTRONG, Judge.
Defendants Charles DiBartolo and Perry Johnson were charged by bill of information with possession with intent to distribute crack cocaine in violation of La.R.S. 40:967(A)(1). Both defendants pled not guilty. The trial court denied the defendants' motions to suppress the evidence. Following a trial by jury both defendants were found guilty as charged. Defendant DiBartolo filed motions for new trial and for post-verdict judgment of acquittal. Subsequently, defendant Johnson adopted the motions filed by defendant DiBartolo. On the same date, the trial court denied the motions. *945 Defendants waived delays and the trial court sentenced each defendant to serve ten years at hard labor. Both defendants were adjudicated habitual offenders under La.R.S. 15:529.1. Defendant Johnson's prior sentence was vacated and he was sentenced as a second felony offender to serve fifteen years at hard labor. Defendant DiBartolo was sentenced as a third felony offender to serve fifteen years at hard labor. Both defendants now appeal.

FACTS:
On October 12, 1993, at approximately 1:00 a.m., three marked New Orleans Police Department units were patrolling in the 3900 block of Magazine Street. Officers Johnny Heck and Gary Waguespack were in the third unit. Officer Waguespack observed the defendants Johnson and DiBartolo standing on the sidewalk. Johnson and DiBartolo seemed surprised when they saw the three police vehicles. Officer Heck then saw DiBartolo turn, take a gun from his waistband area and throw it on the ground. Johnson turned and walked away nervously. Officer Heck radioed the other two vehicles to stop. Officer Heck retrieved the loaded weapon while Officer William Pratts detained DiBartolo. He informed DiBartolo that he was under arrest for carrying a concealed weapon. In a search incident to the arrest, Officer Heck recovered two packages of crack cocaine. At Central Lock-up, two hundred fifty dollars in cash was recovered from DiBartolo.
Officer Waguespack detained Johnson and conducted a protective pat-down frisk for weapons. Waguespack felt a large rock-like object in Johnson's front pants pocket. Believing the substance to be cocaine, the officer retrieved the item which was later determined to be crack cocaine. Officer Waguespack also recovered one hundred forty-six dollars in cash and a beeper.
At trial, Tyrone Sampson and L.J. Murphy testified on behalf of the defendants. Sampson and Murphy stated that the arrests occurred earlier in the evening, around 10:30 p.m. The witnesses testified that they were present in front of DiBartolo's house to act as witnesses for a bill of sale. DiBartolo was selling his vehicle to Johnson. Sampson and Murphy both testified that DiBartolo did not throw a weapon down. They stated that the officers went into DiBartolo's basement and retrieved the weapon. According to the witnesses, the weapon was old and broken. Murphy stated that the gun had been in DiBartolo's basement for several years. Both Sampson and Murphy denied seeing the defendants with cocaine the night in question.
Defendant DiBartolo also testified that defendant Johnson was in the process of buying the vehicle from him when the arrests were made. However, he stated that the arrests occurred around midnight. DiBartolo testified that he was home when he received a phone call from Johnson who stated that he was still interested in purchasing the car. They arranged for Johnson to come over that evening. Before Johnson showed up, DiBartolo asked Murphy to witness the act of sale. While waiting for Johnson, DiBartolo went outside to check out the car. During this time, Sampson came out of the corner store and started talking to DiBartolo. About one-half hour later, Johnson and his brother showed up. Shortly thereafter the police pulled up. All five men were detained. However, only DiBartolo and Johnson were arrested.

ERRORS PATENT:
A review of the record for errors patent reveals that the trial court imposed an illegally lenient sentence after adjudicating DiBartolo a third felony offender under the Habitual Offender Statute. Under La.R.S. 15:529.1 and La.R.S. 40:967, the minimum sentence the trial court could impose was twenty years at hard labor. However, the trial court sentenced DiBartolo to serve fifteen years at hard labor. On appeal this Court will not correct errors favorable to a defendant where the issue is not raised by the State. State v. Fraser, 484 So.2d 122 (1986). The State has not raised this issue. Accordingly, this court will not amend or modify the sentence as imposed. No other errors patent were found.
Johnson and DiBartolo's combined assignment of error:
Defendants argue that the trial court erred in denying their motions to suppress the *946 evidence, namely the crack cocaine seized from Johnson and the crack cocaine and gun seized from DiBartolo.
In reviewing a trial court's judgment concerning a motion to suppress, which it has based on live testimony, "the trial court's purely factual findings must be accepted unless clearly erroneous, or influenced by an incorrect view of the law, and the evidence must be viewed [in the light] most favorable to the party prevailing below." U.S. v. Coleman, 969 F.2d 126, 129 (5th Cir.1992) (quoting U.S. v. Muniz-Melchor, 894 F.2d 1430, 1433-34 (5th Cir.1990), quoting U.S. v. Maldonado, 735 F.2d 809, 814 (5th Cir.1984)).
The testimony of Officer Heck reveals that the officer had probable cause to arrest defendant DiBartolo and that the cocaine was found during a search incident to the arrest. Officer Heck testified that as he and his partner were driving in the 3900 block of Magazine Street, he observed defendant DiBartolo take what appeared to be a gun from his waistband area and throw the gun to the ground. As DiBartolo abandoned the weapon prior to any detention by the police officers, Officer Heck had the authority to seize the weapon. When property is abandoned without any prior unlawful intrusion into a citizen's right to be free from governmental interference then such property may be lawfully seized. State v. Wheeler, 416 So.2d 78 (La.1982); State v. Williams, 398 So.2d 1112 (La.1981). In such cases, there is no expectation of privacy and, thus, no violation of a person's rights. State v. Andrishok, 434 So.2d 389 (La.1983). It is only where a citizen is actually stopped without reasonable cause or when that stop is imminent that the right to be left alone is violated thereby rendering unlawful any resultant seizure of abandoned property. State v. Chopin, 372 So.2d 1222 (La.1979).
Once Officer Heck retrieved the weapon, he had probable cause to arrest DiBartolo for carrying a concealed weapon. After arresting DiBartolo, the officer conducted a search incident to the arrest. It was during this search that Officer Heck found the two plastic bags of cocaine. Each bag contained three rocks of crack cocaine. "A search is per se unreasonable when it is conducted without a warrant issued upon probable cause, ... subject ... to a few ... exceptions." State v. Raheem, 464 So.2d 293, 295 (La.1985). A search made incident to a lawful arrest is one such exception. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). State v. Wilson, 467 So.2d 503, 517 (La.1985), cert. denied, Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985). As this Court noted in State v. Parker, 622 So.2d 791 (La.App. 4 Cir.1993), writ denied, 627 So.2d 660 (La. 1993), the search of the defendant is legal if there is probable cause for his arrest. Id. at 793 (citing Chimel, supra, and Wilson, supra). Probable cause to arrest exists when the facts and circumstances within the officer's knowledge are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Wilson. The determination of probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction. Probable cause, as the very name implies, deals with probabilities. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the available evidence supports a reasonable belief that the person to be arrested has committed a crime. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); State v. Rodrigue, 437 So.2d 830 (La.1983). The determination of probable cause involves factual and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Ogden and Geraghty, 391 So.2d 434 (La.1980). Officer Heck's testimony revealed that he had probable cause to arrest the defendant for carrying a concealed weapon. Heck stated that he saw the defendant remove the gun from his waistband area and throw the weapon to the ground. The gun was concealed by the *947 starter jacket the defendant was wearing. As the officer had probable cause to arrest DiBartolo, the search incident to the arrest was lawful. The officer was within his authority in seizing the cocaine.
Officer Waguespack found the cocaine on defendant Johnson during a pat-down frisk for weapons. The pat-down frisk occurred after Waguespack detained Johnson while Heck was retrieving the weapon thrown down by DiBartolo.
La.C.Cr.P. art. 215.1 allows a police officer to stop a person in a public place whom "he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." While flight, nervousness or startled behavior at the sight of a police officer is not in and of itself enough to constitute reasonable cause to make an investigatory stop, these facts may be highly suspicious and lead to a finding of reasonable cause to detain the individual. State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Reasonable cause for an investigatory stop is something less than probable cause for arrest and must be determined under the facts of each case. The issue is whether the officers had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from government interference. The right to make an investigatory stop must be based upon reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. State v. Ossey, 446 So.2d 280 (La. 1984), cert. den. Ossey v. Louisiana, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Belton; State v. Andrishok. The detaining officer must have knowledge of specific, articulable facts which reasonably warrant the stop. State v. Lee, 462 So.2d 249 (La.App. 4th Cir.1984). The totality of the circumstances must be considered in determining whether reasonable cause exists. State v. Belton; U.S. v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).
Officer Waguespack had reasonable cause to believe that defendant Johnson was engaging in a criminal activity. Defendant Johnson was engaged in a conversation with DiBartolo when Officer Heck saw DiBartolo throw the gun down. Officer Waguespack also testified that the incident occurred in a high drug trafficking area and that Johnson turned and walked nervously away from DiBartolo when Johnson saw the police vehicles proceeding down the street.
In addition, once an officer has reasonable suspicion to detain a suspect, paragraph B of C.Cr.P. art. 215.1 provides:
When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officers reasonably suspects the person possesses a dangerous weapon, he may search the person.
See also State v. Hunter, 375 So.2d 99 (La. 1979). "The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger." State v. Smith, 94-1502 p. 5 (La.App. 4th Cir. 1/19/95), 649 So.2d 1078, 1082.
As DiBartolo had been armed, Officer Waguespack had reason to believe that Johnson might also be armed. Therefore, Waguespack had sufficient cause to conduct a pat-down search for weapons. It was during this pat-down frisk that the officer felt a large rock item in the defendant's pocket which the officer believed to be a rock of crack cocaine. This seizure may be warranted under the limited "plain feel" exception to the warrant requirement recognized by the United States Supreme Court in Minnesota v. Dickerson, ___ U.S. ___, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In Dickerson, the Court ruled that officers may seize contraband detected by touch during a pat-down search if the search remains within the bounds of a Terry pat-down search. The Court stated:
We have already held that police officers, at least under certain circumstances, may seize contraband detected during the lawful execution of a Terry search.... Under [the plain view] doctrine, if police *948 are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. See Horton v. California, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 2307-2308, 110 L.Ed.2d 112 (1990); Texas v. Brown, 460 U.S. 730, 739, 103 S.Ct. 1535, 1541-1542, 75 L.Ed.2d 502 (1983) (plurality opinion). If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the objecti.e. if "its incrimination character [is not] immediately apparent," Horton, supra, at 136, 110 S.Ct. at 2308the plain view doctrine cannot justify its seizure. Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).
We think that this doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendmentor at least no search independent of the initial intrusion that gave the officers their vantage point.... The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.
Minnesota v. Dickerson, at ___, 113 S.Ct. at 2136-2137.
Only a few Louisiana cases have considered Dickerson. In State v. Parker, 622 So.2d 791 (La.App. 4th Cir.1993), writ denied 627 So.2d 660 (1993), the officer, while conducting a pat-down search, seized a matchbox containing crack cocaine. Because the officer could not tell that the matchbox contained contraband just by feeling it, this court found that its seizure was not justified by Dickerson. Likewise, in State v. Jackson, 26,138 (La.App. 2d Cir. 8/17/94), 641 So.2d 1081, the seizure of cocaine from a matchbox inside the defendant's pocket was found not to fall within the "plain feel" exception. However, the court also found that the defendant consented to the removal and opening of the matchbox, which then revealed the cocaine. In State v. Short, 605 So.2d 1102 (La.1992), decided before Dickerson, the officer seized crack cocaine from the defendant's watch pocket discovered during a pat-down search. Although this court upheld the seizure, the Supreme Court reversed, merely stating: "The search went beyond a frisk for weapons." It is unclear, however, if this ruling would be affected by the subsequent ruling in Dickerson.
However, in the present case, Officer Waguespack testified that when he felt the rock-like substance during the pat-down frisk, he immediately believed the substance to be crack cocaine. The seizure of the cocaine clearly falls within the plain feel exception to the warrant requirement.
Accordingly, the trial court did not err in denying the defendants' motions to suppress. This assignment of error is without merit.

DiBartolo's Pro Se Assignment of Error No. 1:
In his first pro se assignment of error, defendant DiBartolo contends that the state failed to produce sufficient evidence to prove beyond a reasonable doubt that he possessed crack cocaine with the intent to distribute.
When assessing the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
*949 In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
La.R.S. 40:967(A) provides in pertinent part that it is "unlawful for any person knowingly or intentionally ... [to] possess with intent to ... distribute" cocaine.
The testimony of the police officers established that the defendants were found to be in possession of crack cocaine. Two plastic bags containing three rocks of cocaine were found on defendant DiBartolo. One large rock of crack cocaine, cash and a beeper were seized from defendant Johnson. The police officers testified that the amount of cocaine found on DiBartolo and the beeper found on Johnson were indicative that the defendants had the intent to distribute cocaine. Further, the officers stated that the defendants were arrested in a high drug trafficking area.
Defendants argue that the testimony of Tyrone Sampson and L.J. Murphy clearly rebuts the officers' testimony. Defendants are correct that Sampson and Murphy's testimony is contradictory to the officers' testimony. However, it is within the jury's discretion to determine the weight and credibility given to a witness' testimony. In the present case, the jury apparently chose to accept the officers' testimony over the testimony of defendants' witnesses. It is not the function of an appellate court to assess credibility or reweigh the evidence. State v. Rosiere, 488 So.2d 965 (La.1986).
Accordingly, there was sufficient evidence for the jury to conclude, beyond a reasonable doubt, that the defendants possessed cocaine with the intent to distribute. This assignment of error is without merit.

DiBartolo's Pro Se Assignment of Error No. 2:
By this assignment, defendant DiBartolo contends that the trial court erred in adjudicating him a triple offender on the basis of having a prior felony conviction resulting from a guilty plea without requiring the state to show that the defendant knowingly and intelligently waived his right in the prior case. As the defendant admitted to the allegations of the multiple bill, the state was relieved of its burden to prove that the guilty plea in the prior offense was knowingly and voluntarily made.
This assignment of error is without merit.

DiBartolo's Pro Se Assignment of Error No. 3:
In this assignment, the defendant alleges that the trial court erred in accepting the defendant's guilty plea to the habitual offender bill of information without first cautioning the defendant as to his right to remain silent as required by the law and the jurisprudence.
The defendant's assignment is without merit because the trial court advised the defendant of his right against self-incrimination, i.e., his right to remain silent, as the following excerpt from the April 8, 1994 habitual offender hearing shows:
THE COURT:
Do you understand you do not have to admit to these prior convictions? You have the right to have a hearing whereby the State must prove these to me. By admitting to this, you give up your right to a hearing, and you give up your right to appeal this aspect of your case. Do you understand that?
THE DEFENDANT:
Yes.
THE COURT:
Do you understandby lawthe minimum sentence that I must give you is imprisonment for not less than 20 years, and the maximum penalty you receive is *950 imprisonment for not more than 60 years by admitting to this. Do you understand that?
THE DEFENDANT:
Yes.
THE COURT:
Do you understand by admitting to this you give up other constitutional rights: Namely, your right to confront and cross-examine those witnesses who accuse you of these crimes; you give up a right to call any witnesses into court and have them testify for your at a hearing; and you give up a privilege that you have against self-incrimination by admitting to this. Do you understand those rights?
THE DEFENDANT:
Yes.
(emphasis added.)
Accordingly, this assignment of error is without merit.
For the foregoing reasons, we affirm the defendants' convictions and sentences.
AFFIRMED.