675 So.2d 771 (1996)
STATE of Louisiana
v.
Richard A. LAVIGNE.
No. 95-KA-0204.
Court of Appeal of Louisiana, Fourth Circuit.
May 22, 1996.
*773 Edward Newman, Orleans Indigent Defender Program, New Orleans, for Appellant.
Harry F. Connick, District Attorney, Joseph E. Lucore, Assistant District Attorney, New Orleans, for Appellee.
Before SCHOTT, C.J., and PLOTKIN and JONES, JJ.
JONES, Judge.
Appellant, Richard Lavigne, was charged by bill of information with possession of cocaine. His pre-trial motion to suppress evidence was denied by the trial court. After a jury trial he was found guilty of attempted possession of cocaine. Appellant pled guilty to a multiple bill and was sentenced to serve two years at hard labor, to run concurrently *774 with any other sentence he may be serving. He appeals.
On March 23, 1994 at approximately 2:00 P.M., Officers Harry O'Neal and Karl Kreiden responded to a panic alarm sounded by a clerk at a convenience store located on La-Salle Street. Upon arriving at the store, the clerk informed the officers that appellant had been inside the store with a fifteen month old child, but had since left. Appellant had caused a disturbance, and the clerk, along with several customers, became concerned for the child's safety.
When the police observed appellant, he was walking down LaSalle Street pushing a bicycle and carrying the child by the back of the pants. The officers approached appellant in an unmarked police car. Upon exiting the car, the officers identified themselves. Appellant immediately threw down the bike and began to yell at the police. The entire time, appellant shook the child. Officer O'Neal called for back-up help because it appeared that appellant was mentally disturbed and the officers were concerned for the child's safety. Three police units responded to the call. Once the back-up units arrived, the officers were able to separate the child from the appellant. At that point in time, the officers intended to transport appellant to Charity Hospital because of his behavior.
Prior to placing appellant into the squad car, Officer O'Neal conducted a pat down search and found a crack pipe in appellant's right front pocket. Appellant was subsequently arrested and transported to Central Lock-Up. Residue found in the pipe tested positive for cocaine.
Appellant testified that on his days off from work, he took care of his daughter. He stated that he was riding her on his bike when the back wheel of the bike was struck by a motorist. Neither he nor his daughter were injured; however, the bicycle's back wheel was bent and no longer operable. As a result appellant was forced to carry his daughter.
Appellant further testified that he entered the store to buy some wine for himself and a piece of candy for his daughter. He denied creating a disturbance inside the store. He testified that while walking away from the store he saw the crack pipe on the sidewalk and picked it up, intending to throw it away when he got home; but, he was apprehended by the police. Appellant stated that he became angry with the police because they accused him of kidnapping his own daughter.
A review of the record shows no errors patent.
In his first assignment of error, appellant asserts that the trial court erred in admitting hearsay testimony from the investigating officers concerning statements made by the store clerk. The defense also requested that the trial court prohibit the state from using the content of the statements in its opening argument.
At trial, the following testimony was given by Officer O'Neal on direct examination:
ADA: And could you tell us the facts and circumstances surrounding Mr. Lavigne's arrest?
A. Yes, sir. On that particular date we received a panic alarm call from a grocery store at Lasalle and Louisiana Avenue. The nature of the call wasn't determined until we got to the scene whereupon we were met by the store keeper who stated that an individual had been inside the store with a little girl and had caused quite a disturbance and the store keeper as well as several customers that were in the store as wellbecause the store keeper was a Vietnamese ladywere afraid for the safety of the little girl. The store keeper then pointed out Mr. Lavigne who was walking on Lasalle Street in a downtown direction pushing a bicycle and carrying a little child by the back of its pants. The baby was lying parallel to the sidewalk and he was holding the child like a grocery bag.
Officer Kreider testified as follows:
ADA: And could you please explain to the ladies and gentlemenladies of the jury how you and Officer O'Neal came about making this arrest?
A. We were on our way back to the station, it was in the afternoon, and a panic alarm came out of the grocery store at 2332 Louisiana Avenue. As we stopped, the store manager, a Vietnamese man, advised *775 us that a man was just in the store and he was kind of irate and he had a baby that he was kind of like throwing around like a doll. So, we went out to the sidewalk and he pointed down the street, down Lasalle Street, pointed out the man to us.
Prior to the direct examination of both officers, the defense requested that the Court admonish the officers not to testify concerning the statements made by the store clerk. Both requests were denied.
Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La.Code Evid. art. 801(C). State v. Wille, 559 So.2d 1321, 1331 (La.1990), appeal after remand 595 So.2d 1149 (La.1992), cert. denied 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992); State v. Preston, 623 So.2d 938 (La.App. 4th Cir.1993).
Law enforcement officers may not testify as to the contents of an informant's tip because such testimony violates the accused's constitutional right to confront and cross-examine his accusers. State v. Hearold, 603 So.2d 731 (La.1992). Moreover, in an exception to the hearsay rule based on an officer's testimony regarding information which immediately prompted an investigation, the issue of relevancy is significantly related to the hearsay issue. State v. Wille, 559 So.2d at 1332. The fact that an officer acted on information obtained from an informant may be relevant to explain his conduct, but may not be used as a passkey to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule. State v. Hearold, 603 So.2d at 737.
Here, appellant argues that the content of the hearsay statements was not relevant to his alleged possession of cocaine. Furthermore, he argues that the statements concerning his abuse of the child were particularly inflammatory in front of an all female jury. Finally, appellant contends that the testimony was irrelevant because the police themselves saw appellant carrying the child in a way that gave the police concern.
Under Hearold, the officers' testimony relative to the statements made by the store clerk are impermissible hearsay. Nonetheless, introduction of statements objected to as hearsay which are merely corroborative and cumulative of other testimony presented by the state is harmless error. State v. Wille, 559 So.2d at 1332. As the defense points out, the hearsay testimony of the officers was corroborated by what they actually observed and testified to at trial. Therefore, even though the testimony was unnecessary to prove the criminal activity for which defendant was being tried, possession of cocaine, admission of the hearsay testimony was harmless. Appellant's first claim is without merit.
In his second assignment of error, appellant asserts that the trial court erred in refusing to suppress the evidence seized pursuant to the pat down search. Specifically, appellant argues that the officers did not have reasonable suspicion of criminal activity to justify the initial stop, nor did the officers have an articulable belief that they were in danger so as to justify the subsequent frisk. Appellant pro se also contends that the evidence should have been suppressed because he was not informed of his Miranda rights at the time of his arrest.
Recently, this court stated:
La.C.Cr.P. art. 215.1 allows a police officer to stop a person in a public place whom "he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." While flight, nervousness or startled behavior at the sight of a police officer is not in and of itself enough to constitute reasonable cause to make an investigatory stop, these facts may be highly suspicious and lead to a finding of reasonable cause to detain the individual. State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Reasonable cause for an investigatory stop is something less than probable cause for arrest and must be determined under the facts of each case. The issue is whether the officers had sufficient knowledge of *776 facts and circumstances to justify an infringement on the individual's right to be free from government interference. The right to make an investigatory stop must be based upon reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. State v. Ossey, 446 So.2d 280 (La.1984), cert. den. Ossey v. Louisiana, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Belton; State v. Andrishok [434 So.2d 389 (La.1983)]. The detaining officer must have knowledge of specific, articulable facts which reasonably warrant the stop. State v. Lee, 462 So.2d 249 (La.App. 4th Cir.1984). The totality of the circumstances must be considered in determining whether reasonable cause exists. State v. Belton; U.S. v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).
State v. Johnson, 94-1170, pgs. 5-6 (La.App. 4 Cir. 8/23/95); 660 So.2d 942, 947, writs denied, 95-2331 (La. 2/2/96); 666 So.2d 1092 and 95-3044 (La. 2/2/96); 666 So.2d 1105.
In the present case, the police stopped appellant after being informed of appellant's behavior and treatment of the child inside the convenience store, and after observing the appellant carrying the child by the back of the pants. Therefore, the officers' information and the appellant's conduct provided the officers with reasonable suspicion of criminal activity to justify the stop of appellant.
Once an officer has reasonable suspicion to detain a suspect, paragraph B of art. 215.1 provides:
When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
In State v. Hunter, 375 So.2d 99, 101-102 (La.1979), the court stated:
While it is true that an officer is never justified in conducting a pat-down for weapons unless the original detention itself was justified, a lawful detention for questioning does not necessarily give the officer authority to conduct a pat-down for weapons. Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. [1] at 27, 88 S.Ct. [1868] at 1883, 20 L.Ed.2d [889] at 909 [(1968)]. Further, the officer's belief is not reasonable unless the officer is "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. [40] at 64, 88 S.Ct. [1889] at 1903, 20 L.Ed.2d [917] at 935 [(1968)]. It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a "substantial possibility" of danger. (citation omitted)
In State v. Parker, 622 So.2d 791 (La.App. 4th Cir.), writ denied, 627 So.2d 660 (La. 1993), this court upheld the right of the police officer to frisk a suspect following an investigatory stop. The court stated:
Defendant was in a high crime area known for drug deals, the officers had received information that the Mitchells were engaged in selling drugs ... when the suspects saw the officers drive up, they acted `fidgety' to the extent that many of them ran away ... defendant was in extremely close proximity to the vehicle [from which drugs were being sold], and that they [the officers] did not search the defendant until after they found the drugs on the Mitchells and defendant attempted to leave the scene. The officers were justified in conducting a pat down search of the defendant for weapons.
Parker, 622 So.2d at 795.
However, in State v. Slan, 624 So.2d 451 (La.App. 4th Cir.1993), rev. on other grounds, 93-2590 (La. 3/3/94); 632 So.2d 749, this court upheld the trial court's suppression of evidence derived from a frisk. The officer in that case testified that he frisked the suspect attempting to find narcotics and *777 there was no evidence to indicate that the frisk was conducted for safety reasons.
In the present case, Officer O'Neal testified that he routinely conducts searches of individuals prior to placing them in a police vehicle. Also, appellant's behavior was erratic. Therefore, under the circumstances, it appears that the officers were justified in frisking the appellant.
Having found that the officers were justified in frisking the appellant, the seizure of the crack pipe was warranted under the limited "plain feel" exception to the warrant requirement. See Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In Dickerson, the Court ruled that officers may seize contraband detected by touch during a patdown search if the search remains within the bounds of a Terry patdown search. The Court stated:
We have already held that police officers, at least under certain circumstances, may seize contraband detected during the lawful execution of a Terry search.... Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. See Horton v. California, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 2307-2308, 110 L.Ed.2d 112 (1990); Texas v. Brown, 460 U.S. 730, 739, 103 S.Ct. 1535, 1541-1542, 75 L.Ed.2d 502 (1983) (plurality opinion). If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the objecti.e. if "its incrimination character [is not] immediately apparent," Horton, supra, at 136, 110 S.Ct. at 2308the plain view doctrine cannot justify its seizure. Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).
We think that this doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendmentor at least no search independent of the initial intrusion that gave the officers their vantage point.... The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.
Minnesota v. Dickerson, 508 U.S. at 375, 113 S.Ct. at 2136-2137.
As noted in State v. Johnson, 94-1170, pg. 7 660 So.2d at 948:
Only a few Louisiana cases have considered Dickerson. In State v. Parker, 622 So.2d 791 (La.App. 4th Cir.1993), writ denied 627 So.2d 660 (1993), the officer, while conducting a pat-down search, seized a matchbox containing crack cocaine. Because the officer could not tell that the matchbox contained contraband just by feeling it, this court found that its seizure was not justified by Dickerson. Likewise, in State v. Jackson, 26,138 (La.App. 2d Cir. 8/17/94), 641 So.2d 1081, the seizure of cocaine from a matchbox inside the defendant's pocket was found not to fall within the "plain feel" exception. However, the court also found that the defendant consented to the removal and opening of the matchbox, which then revealed the cocaine. In State v. Short, 605 So.2d 1102 (La.1992), decided before Dickerson, the officer seized crack cocaine from the defendant's watch pocket discovered during a pat-down search. Although this court upheld the seizure, the Supreme Court reversed, merely stating: "The search went beyond a frisk for weapons." It is unclear, however, if this ruling would be affected by the subsequent ruling in Dickerson.

*778 In Johnson this court found that the seizure of a rock of crack cocaine was justified under this exception: "Officer Waguespack testified that when he felt the rock-like substance during the pat-down frisk, he immediately believed the substance to be crack cocaine. The seizure of the cocaine clearly falls within the plain feel exception to the warrant requirement." Id. at 948.
In the present case, Officer O'Neal testified at trial that during the search, he felt an object in Mr. Lavigne's right front pants pocket which, from prior experience, he suspected to be what is commonly called a "crack pipe." Like Johnson, the testimony indicates that Officer O'Neal was aware, without further investigation, that the object in appellant's pants pocket was a crack pipe. Therefore, seizure of the crack pipe was justified under the "plain feel" exception.
Finally, as previously noted, appellant pro se contends that the evidence should have been suppressed because he was not informed of his Miranda rights at the time of his arrest. No confessions nor inculpatory statements were made by appellant at the time of his arrest or thereafter. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), applies only to such statements made by a suspect after the suspect invokes his right to consult with an attorney. Appellant's assignment of error is without merit.
In another pro se assignment of error, appellant urges four errors relative to his multiple offender adjudication. He first argues that the trial court failed to inform him of his statutory rights prior to his guilty plea to the multiple bill as required by La. R.S. 15:529.1(D).
La.R.S. 15:529.1(D) provides that the trial court shall inform the defendant of the allegations contained in the multiple bill of information and to his right to be tried as to the truth thereof according to law prior to asking the defendant whether the allegations are true. Furthermore, if a defendant pleads guilty to the multiple bill or "if he acknowledges or confesses in open court ... that he has been so convicted", the trial court must first duly caution him as to his rights.
Appellant was informed of the allegations contained in the multiple bill of information, his right to a hearing on the matter, and his right to remain silent. Accordingly, his claim is without merit.
Next, appellant urges that the trial court failed to vacate the original sentence prior to imposing the enhanced sentence under the multiple bill. The first sentence imposed upon appellant was his sentence as a multiple offender. Therefore, this claim is without merit.
Appellant's next claim that the trial court erred in imposing the sentence without benefit of parole is also without merit. The trial court did not restrict parole eligibility when imposing the sentence.
Appellant also contends that the state failed to sufficiently prove his status as a multiple offender; however, appellant's guilty plea to the multiple bill bars him from raising a claim that the state did not produce sufficient evidence at the multiple offender hearing. State v. Merschal, 499 So.2d 360 (La.App. 4th Cir.1986).
Finally, appellant contends that his sentence is not running concurrently with a sentence he received in Jefferson Parish as promised. The transcript of the multiple offender hearing shows that the trial court ordered appellant's sentence to run concurrently with any other sentence appellant may be serving. Nevertheless, the court noted that the decision to run the sentences concurrently was ultimately up to the court in Jefferson Parish. Appellant's claim is without merit.
In yet another pro se assignment of error, appellant contends that the evidence was insufficient to support a conviction for attempted possession of cocaine.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, *779 588 So.2d 757 (La.App. 4th Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do.
To support a conviction for possession of cocaine, the state must prove that the defendant was in possession of the illegal drug and that he knowingly possessed it. State v. Chambers, 563 So.2d 579 (La.App. 4th Cir.1990). To prove attempt, the state must show that the defendant committed an act tending directly toward the accomplishment of his intent to possess cocaine. Id.
The elements of knowledge and intent are states of mind and need not be proven as facts, but rather may be inferred from the circumstances. State v. Reaux, 539 So.2d 105, 108 (La.App. 4th Cir.1989). The jury may draw reasonable inferences to support these contentions based upon the evidence presented at trial. State v. Reaux, 539 So.2d at 108.
The appellant here argues that he lacked the specific intent to possess the cocaine because, at the time he picked the crack pipe up, he did not know that the pipe contained cocaine residue because he could not see the residue.
In State v. Trahan, 425 So.2d 1222, 1225-1226 (La.1983), the Supreme Court found insufficient evidence to support a conviction for possession of cocaine where a small amount of cocaine was found in a vial on a shelf in a rented trailer in which one of the defendants lived. Neither the cocaine nor the vial was offered into evidence at trial; the cocaine had been used in the laboratory test and the vial was lost. The Supreme Court found that no evidence was presented as to guilty knowledge by the defendant who lived in the trailer and claimed to know nothing of the vial; the other defendant had no dominion and control over the vial nor any knowledge of it.
The Second Circuit distinguished Trahan and affirmed a conviction for possession of cocaine where the only evidence seized was drug paraphernalia containing a residue of cocaine. In State v. Spates, 588 So.2d 398, 401-2 (La.App. 2nd Cir.1991), the appellant argued that his "straight shooter," containing a cocaine residue, did not rise to the level of sufficient proof that he knowingly and intentionally possessed cocaine. The court noted that a conviction for possession of a controlled dangerous substance may rest on the possession of traces or residue of the substances, and that possession of narcotics paraphernalia is relevant evidence of intent or guilty knowledge of the defendant's possession of controlled dangerous substances. The Second Circuit, in affirming the conviction, stated that possession of the straight shooter was evidence of guilty knowledge that it contained cocaine because the object had no other use.
In the present case the facts and circumstances considered in the light most favorable to the prosecution appear sufficient to convince a rational trier of fact that the appellant attempted to possess cocaine and to exclude any reasonable hypothesis of his innocence. Appellant was seen acting in an irate manner. The small pipe found in his pocket is the type commonly used for smoking cocaine, and it contained a residue which proved to be cocaine. Here, guilty knowledge can be inferred from the appellant's actions prior to his arrest, from his dominion and control of the pipe commonly used with drugs, and from the residue of cocaine found in the pipe. Unlike the appellant in Trahan who claimed no knowledge of the drugs found in his trailer, appellant was in possession of the pipe containing the drug, and the only reasonable interpretation is that he knew the pipe contained cocaine residue. His claim is without merit.
In his last assignment of error, appellant contends that counsel was ineffective for failing to adequately investigate the case. Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief filed in the trial court where a full *780 evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir. 1990); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4th Cir. 1986); State v. Landry, 499 So.2d 1320 (La. App. 4th Cir.1986).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir. 1992).
Here, appellant contends that counsel was ineffective for failing to speak with the store clerk to confirm the officer's story that he was mistreating the child. He also suggests that his attorney should have spoken to the police dispatcher for the same reason.
Appellant was on trial for possession of cocaine and not for mistreating his child. Furthermore, as noted earlier, the officers also observed appellant's treatment of his child. Therefore, appellant fails to show how testimony from the store clerk or the dispatcher would have made a difference in the outcome of a drug trial. Accordingly, appellant fails to show prejudice, and his claim is without merit.
CONVICTION AND SENTENCE AFFIRMED.
SCHOTT, C.J., concurs in the result.
SCHOTT, Chief Judge, concurs in the result:
I do not find that the statements elicited by the officers from the shopkeeper concerning defendant's erratic behavior were inadmissible hearsay. First, these statements were not offered to prove the truth of their content, they were only offered to prove that the officers received a report involving the safety of a child and defendant's behavior which called for an investigation. Second, such a report is admissible as background information to explain why the police were investigating.
Next, I do not consider this stop to be within the ambit of C.Cr.P. art. 215.1. Defendant was stopped because he appeared to be mentally sick, a danger to himself or others. The officers intended to take him to Charity Hospital. They did not consider him to be a criminal suspect. Surely, it was perfectly reasonable to search defendant before locking him up in the car. After all, he appeared to be deranged.