liCIACCIO, Judge.
We grant certiorari to review the State’s writ application to consider whether the trial court erred in granting defendant’s motion to suppress the evidence. In granting the motion, the trial judge found that the police did not have probable cause to search the defendant and the warrantless search was unreasonable under the Fourth Amendment. We disagree.
The Fourth Amendment to the United States Constitution protects people against unreasonable searches and seizures. LSA-C.Cr.P. art. 215.1, as well as federal and state jurisprudence, recognizes the right of a law enforcement officer to temporarily detain and interrogate a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Jernigan, 377 So.2d 1222 (La.1979). Pursuant to art. 215.1, when an officer has stopped the person for questioning and he reasonably suspects that he may be in danger, he may frisk the person’s outer clothing for a dangerous weapon and if the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person. Reasonable cause for an investigatory stop is something less than probable cause; nevertheless, the officer must have articulable knowledge of particular facts which, in conjunction with reasonable inferences drawn therefrom, is sufficient to provide reasonable grounds to suspect criminal activity. State v. Bickham, 404 So.2d 929 (La.1981). The totality of the circumstances must be considered in determining the rea *1048 sonableness of the investigatory stop. State v. Belton, 441 So.2d 1195 (La.1983), cert. den., Belton v. Louisiana, 466 ILjaS. 953,104 S.Ct. 2158, 80 L.Ed.2d 543 (La.1984).
In State v. Jernigan, supra, the police station received an anonymous call that a black male wearing a yellow shirt and blue pants and armed with a handgun was sitting in Sander’s bar located at 4218 Thalia Street. A police officer responded to the call and found a person, Jernigan, fitting the description at that location. The officer approached Jernigan, directed him to stand, and immediately conducted a frisk.. While frisking Jer-nigan, the officer felt a gun in his pants pocket. The officer then searched the pocket and retrieved a .38 caliber revolver. In upholding the trial court’s denial of Jemigan’s motion to suppress the physical evidence, the Court held that where the information received from the tipster carried enough indicia of reliability, such as specificity of the information and corroboration by independent police work, the initial detention and subsequent frisk of Jernigan were justified. The Court also held that where the information was correct and presented an immediate and real danger to the public, such as where the crime being investigated involved a handgun, prompt police action was justified to prevent possible serious harm.
Furthermore, in Minnesota v. Dickerson, 508 U.S. 366,113 S.Ct. 2130,124 L.Ed.2d 334 (1993), the Court ruled that officers may seize contraband detected by touch during a pat down search if the search remains within the bounds of a Terry patdown search. The Court stated:
We have already held that police officers, at least under certain circumstances, may seize contraband detected during the lawful execution of a Terry search.... Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. See Horton v. California, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 2307-2308, 110 L.Ed.2d 112 (1990); Texas v. Brown, 460 U.S. 730, 739, 103 S.Ct. 1535, 1541-1542, 75 L.Ed.2d 502 (1983) (plurality opinion). If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object — i.e. if “its incrimination character [is not] immediately apparent,” Horton, supra, at 136,110 S.Ct. at 2308 — the plain view doctrine cannot justify its seizure. Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).
We think that this doctrine has an obvious application by analogy to eases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no “search” within the meaning of the Fourth Amendment — or at least no search independent of the initial intrusion that gave the officers their vantage point.... The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons; if the object is contraband its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.
Minnesota v. Dickerson, 508 U.S. at 374-376, 113 S.Ct. at 2136-2137.
As noted in State v. Johnson, 94-1170, pg. 7, (La.App. 4 Cir. 8/23/95); 660 So.2d 942, 948, writs denied, 95-2331 (La.2/2/96); 666 So.2d 1092 and 95-3044 (La.2/2/96); 666 So.2d 1105.
Only a few Louisiana cases have considered Dickerson. In State v. Parker, 622 So.2d 791 (La.App. 4th Cir.1993), writ denied 627 So.2d 660 (1993), the officer, while conducting a pat-down search, seized a matchbox containing crack cocaine. Because the officer could not tell that the matchbox contained contraband just by *1049 feeling it, this court found that its seizure was not justified by Dickerson. Likewise, in State v. Jackson, 26,138 (La.App.2d Cir. 8/17/94), 641 So.2d 1081, the seizure of cocaine from a matchbox inside the defendant’s pocket was found not to fall within the “plain feel” exception. However, the court also found that the defendant consented to the removal and opening of the matchbox, |4which then revealed the cocaine. In State v. Short, 605 So.2d 1102 (La.1992), decided before Dickerson, the officer seized crack cocaine from the defendant’s watch pocket discovered during a pat-down search. Although this court upheld the seizure, the Supreme Court reversed, merely stating: “The search went beyond a frisk for weapons.” It is unclear, however, if this ruling would be affected by the subsequent ruling in Dickerson.
In Johnson we found that the seizure of a rock of crack cocaine was justified under this exception: “Officer Waguespack testified that when he felt the rock-like substance during the pat-down frisk, he immediately believed the substance to be crack cocaine. The seizure of the cocaine clearly falls within the plain feel exception to the warrant requirement.” Id. at 948.
In State v. Lavigne, 95-KA-0204 (La.App. 4th Cir. 5/22/96), 675 So.2d 771, the police officer testified at trial that during the search, he felt an object in the defendant’s right front pants pocket which, from prior experience, he suspected to be what is commonly called a “crack pipe.” As in Johnson, we found that his testimony indicated that the officer was aware, without further investigation, that the object in the defendant’s pants pocket was a crack pipe. Therefore, seizure of the crack pipe was justified under the “plain feel” exception.
In the instant case, Officer Jake Schnapp testified that on July 12, 1995, at approximately 11:30 p.m., he and two other officers were on routine patrol when they were flagged down by a woman. She told the officers that she had observed a man wearing a black and white T-shirt with a Nike logo standing in front of Juicy’s bar and that the man was in possession of a weapon. The woman also told the officers that she had seen the man take a weapon out of a blue van and put it in his waistband.
Based on this tip, the officers went to Juicy’s bar, which was only two Rblocks away. They saw four men loitering on a corner of the intersection. One fit the clothing description the officers received. They watched this man, later identified as the defendant, walk over to a blue van, open the door, put something in it, close the door, and come back to the group. The officers then stopped all four men and did pat down searches for weapons. The defendant did not have any weapons. However, as Officer Schnapp passed his hand over the defendant’s right front pants pocket, the defendant became visibly nervous. The officer felt a golf-ball shaped object in the defendant’s pocket. Officer Schnapp testified that based on the defendant’s acting nervously and the size, shape, and texture of the object, he believed the object was contraband. He then went into the defendant’s pocket, and retrieved nineteen pieces of clear plastic containing cocaine. Officer Schnapp arrested the defendant and charged him with possession with intent to distribute cocaine. He also testified that a search of the blue van disclosed a gun.
In light of the facts of this case, we find that the officers had probable cause to conduct an investigatory stop and pat down search of the defendant. A concerned citizen stopped the officers patrolling in a high crime area and gave them information regarding a possible crime. Upon investigating, the officers determined the accuracy of the information and decided to stop and detain the defendant for questioning. Because the possible crime involved a handgun, the officers were justified in patting down the defendant for weapons. We further find that the subsequent search of defendant’s pocket and seizure of the cocaine were justified once Officer Schnapp plainly felt what he believed to be contraband in the defendant’s pocket.
For the above reasons, we find that the trial judge abused his discretion in finding that the officers did not have probable cause to conduct an investigatory stop and pat down search of the defendant. Accordingly, we |figrant the application of the State, re *1050 verse the ruling of the trial judge and deny the defendant’s motion to suppress the evidence. The case is remanded to the trial court for further proceedings.

WRIT GRANTED; JUDGMENT REVERSED AND REMANDED.