395 So.2d 669 (1981)
STATE of Louisiana
v.
Andre J. HAYNIE.
No. 80-K-2098.
Supreme Court of Louisiana.
January 26, 1981.
Rehearing Denied March 20, 1981.
Concurring Opinion March 31, 1981.
*671 Wellborn Jack, Jr., Jack, Jack, Cary & Cary, Shreveport, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Billy G. Lutes, Dist. Atty., Joseph Beck, Gregory Wample, Asst. Dist. Attys., Colfax, for plaintiff-respondent.
CUTRER, Justice Ad Hoc.[*]
Defendant, Andre J. Haynie, was charged with forcible rape, a violation of La.R.S. 14:42.1.[1] Defendant, present with counsel, was formally arraigned and entered a plea of not guilty. By motion filed July 10, 1980, counsel for the defendant moved to suppress defendant's confession. This motion was denied following a hearing on September 8, 1980. The defendant now appears before this court on a grant of supervisory writs.
Evidence adduced at the hearing on the motion to suppress showed the following:
On January 28, 1980, Deputy Nugent of the Grant Parish Sheriff's Department swore out an affidavit alleging that defendant, Andre Haynie, "did feloniously violate and commit Aggravated Burglary and Aggravated Rape" on January 25, 1980, in Grant Parish. A justice of the peace signed the arrest warrant which was then brought to the Shreveport police. Shreveport officers took the warrant to the home of Ms. Nettis McCray, an aunt of Andre Haynie. At approximately 4:00 A.M., defendant answered the door and was arrested for aggravated burglary and aggravated rape. He was handcuffed and taken back to Grant Parish. At the Grant Parish Sheriff's office defendant gave a recorded statement wherein he admitted to entering the home of a Ms. Snyder through a window, to having sex with her and taking approximately four hundred ($400.00) dollars from her purse.
The assignment of error number 1 contends that the trial court erred by overruling defendant's motion to suppress the confession. This assignment brings up several issues.
The defendant first urges that the arrest warrant was invalid. The defense further *672 argues that without a valid arrest warrant the arrest was illegal, according to the recent United States Supreme Court case of Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which held that a valid arrest warrant is necessary to arrest an individual in a private residence absent exigent circumstances.
Defense argues that even if the arrest warrant is held valid, a search warrant is necessary to arrest a suspect in the home of a third party.
The defense also asserts that the confession is tainted by the illegal arrest, and that, in any event, the state has failed to prove that the confession was voluntary. We will address these issues in the order set forth.

VALIDITY OF ARREST WARRANT
The defense contends that the arrest warrant issued herein was invalid as the affidavit did not recite any of the facts and circumstances which led the affiant to the conclusion that a crime had been committed by defendant. It is contended that the affidavit requirements for an arrest warrant must substantially meet the same tests as a search warrant; i. e., to establish probable cause for the issuance of an arrest warrant such affidavit must set forth facts and circumstances within the knowledge of the affiant, based upon reasonably trustworthy information, which would support a reasonable belief that the accused person committed the offense. It is contended that the magistrate's determination of probable cause must be based solely upon the information contained within the "four corners" of the affidavit.
The affidavit by Deputy Nugent recites no facts or circumstances in support of the officer's complaint that:
"Andre Haynie late of the Parish of Grant, Louisiana, on or about the 25 day of January 1980 in the parish and state aforesaid did feloniously violate and commit Aggravated Burglary and Aggravated Rape."
The requirements for an arrest warrant affidavit are set forth in the Louisiana Code of Criminal Procedure, article 202, which provides:
"A warrant of arrest may be issued by any magistrate, and, except where a summons is issued under Article 209, shall be issued when:
(1) The person making the complaint executes an affidavit specifying, to his best knowledge and belief, the nature, date, and place of the offense, and the name and surname of the offender if known, and of the person injured if there be any; and
(2) The magistrate has probable cause to believe that an offense was committed and that the person against whom the complaint was made committed it."
The terms of this article do not require that the facts and circumstances surrounding the commission of the offense be set forth in the affidavit. The affiant only needs to specify the nature, date and place of the offense along with the name of the offender. The nature of the offense refers to the type of offense committed; in this case, "Aggravated burglary and Aggravated rape."
The magistrate who issues the warrant must be supplied with facts and circumstances which would reflect probable cause for the issuance of the arrest warrant. The statute cited above does not require that such be incorporated into the affidavit, but may be supplied verbally to the magistrate. If such information reflects the necessary probable cause, the magistrate is authorized to issue the arrest warrant.
The question then arises as to whether Officer Nugent had sufficient information to support a finding of probable cause and whether he supplied such to the justice of the peace who issued the arrest warrant.
The record reflects that Officer Nugent had been investigating the offense for two days. During this time he had obtained the following information:

*673 (1) The night that Mrs. Snyder was raped, approximately five hundred ($500.00) dollars [three (3) one hundred dollar bills and some twenties] had been taken from Mrs. Snyder;
(2) A former deputy, Dan Fletcher, had told Deputy Nugent that he (Fletcher) had seen Haynie with a large sum of money. Also, a juvenile, Dennis Holmes, was accompanying Haynie when Fletcher saw the money;
(3) Dennis Holmes told Deputy Nugent that Haynie had stated that he had been at the home of Mrs. Snyder on the night of the offense and that she had given him the money, and that the money was in denominations of three (3) one hundred dollar bills and several twenty dollar bills.
The standard to establish probable cause to arrest in such a situation was set forth in State v. Collins, 378 So.2d 928, 930 (La.1980), cert. den. 447 U.S. 928, 100 S.Ct. 3025, 65 L.Ed.2d 1122 (1980).

"Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Wilkens, 364 So.2d 934 (La.1978); State v. Johnson, 363 So.2d 684 (La.1978); State v. Marks, 337 So.2d 1177 (La.1976). Although mere suspicion cannot justify an arrest, State v. Thomas, 349 So.2d 270 (La.1977), the officer does not need sufficient proof to convict. State v. Randolph, 337 So.2d 498 (La.1976)."

In applying these principles to the information had by Officer Nugent, probable cause existed for the arrest of defendant.
Officer Nugent testified at the hearing that he relayed all of this information to the magistrate. Upon being supplied with this information, the justice of the peace had probable cause to issue the arrest warrant. We hold that the arrest warrant complied with the requirements of La.C. Cr.P. art. 202.[2]
The defendant relies heavily on the case of Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), for support of its position that the affidavit for the arrest warrant must contain all the facts and circumstances to support probable cause for the issuance of the warrant.
The affidavit set forth in Whiteley is very similar to the affidavit in the case at bar. That case, however, is distinguishable from the case at bar. In Whiteley, the only information supplied to the magistrate at the time of the issuance of the warrant was that set forth in the affidavit. The court clearly indicates that no further information was supplied to the magistrate at the time of the warrant issuance, thus, the magistrate clearly had no probable cause to issue the arrest warrant. We do not interpret Whiteley to require that all the facts and circumstances, reflecting probable cause, be set forth in the affidavit. We interpret that case to mean simply that an arrest warrant cannot issue unless the magistrate has probable cause from facts and circumstances presented to him by the officer, either incorporated in the affidavit or by the officer supplying such information verbally at the time the complaint is filed.
We conclude that the arrest warrant issued in this case was issued by a proper official who possessed knowledge of facts and circumstances that reflected a probable cause to believe that defendant committed the offense complained of.
We may add, in conclusion of this issue, that, while the affidavit for an arrest *674 warrant does not require that the facts and circumstances reflecting probable cause be recited therein, the law certainly does not prohibit such inclusion. The inclusion of such information would establish a clearer record and obviate possible issues which would otherwise arise.
Having concluded that the arrest warrant was valid we do not need to address the second issue of whether the arrest of defendant at a private residence without a warrant was valid.

ARREST OF DEFENDANT
Our next issue for determination is whether a search warrant, in addition to an arrest warrant, was necessary in order to make a valid arrest of defendant at the residence of a third party.
The facts surrounding the arrest of defendant are as follows:
Deputy Nugent stated that he had received information that defendant was at his aunt's house in Shreveport. After obtaining the arrest warrant, Deputy Nugent, two other deputies and the sheriff of Grant Parish, traveled to Shreveport, during the night of January 28-29, to apprehend defendant. Upon arrival, the arrest warrant was given to the Shreveport police for the purpose of making the arrest. The Shreveport officers went to the residence of defendant's aunt. They knocked upon the front door. Defendant testified that he was alone in the house when the officers knocked on the door. Defendant stated that he was fully clothed and asleep on a couch in the living room. He testified that the knock on the door awakened him and he went to the window and saw police and police cars outside. He asked who was outside and was told that it was the police. Defendant opened the door. The police placed him under arrest.[3] Defendant was taken to the police station where he was turned over to the Grant Parish authorities.
In the recent case of State v. Ragsdale, 381 So.2d 492, 496 (La.1980), this court held that, without reasonable belief that defendant could be found in the third party's home as required by La.C.Cr.P. art. 224, search of such residence for the defendant was constitutionally prohibited. In Ragsdale, the third party answered the door. When it was opened, the police entered with guns drawn and began a search of the house, finding defendant in the shower in the bathroom. This court stated as follows:
"... Any other result raises the possibility of police use of the arrest warrant, with no limitation, as carte blanche to search any residence in which they may believe a suspect is hiding. Such arbitrary invasion of the privacy of a person's home is exactly what the constitutional prohibitions of unreasonable searches seeks to prevent. State v. Jones, 358 So.2d 1257 (La.1978)."

The question then arises as to whether Ragsdale renders the arrest invalid under the facts presented herein. We conclude, for the reasons set forth below, that the Ragsdale rule does not prohibit the arrest in the case at bar.
Defendant was alone in the residence of his aunt. He opened the front door after ascertaining that the persons outside were police officers. No search of the premises was conducted in order to apprehend defendant and to make an arrest. Such a procedure does not violate the constitutional prohibitions of unreasonable searches. No search warrant is required to effectuate the arrest under these circumstances.
In the case of United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), the arresting officers, without an arrest warrant but with probable cause, went to arrest defendant on a drug related charge. Upon arriving at Santana's residence the officers saw her standing in the doorway of the house. After she saw the officers, she retreated into the house. The *675 officer pursued her into the house, making the arrest. In upholding the arrest the court held as follows:

"In United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), we held that the warrantless arrest of an individual in a public place upon probable cause did not violate the Fourth Amendment. Thus the first question we must decide is whether, when the police first sought to arrest Santana, she was in a public place.

"While it may be true that under the common law of property the threshold of one's dwelling is `private' as is the yard surrounding the house, it is nonetheless clear that under the cases interpreting the Fourth Amendment Santana was in a `public' place. She was not in an area where she had any expectation of privacy. `What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection.' Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). She was not merely visible to the public but was as exposed to the public view, speech, hearing, and touch as if she had been standing completely outside her house. Hester v. United States, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924). Thus, when the police, who concededly had probable cause to do so, sought to arrest her, they merely intended to perform a function which we have approved in Watson."

The court also held that the officers had the right to pursue Santana into the house for the arrest since the arrest began by Santana's appearance in a doorway which was classified as a "public" place.
The principles enunciated in Santana are applicable to the facts herein. The Shreveport officers proceeded to the residence of Haynie's aunt as a result of information supplied to them by Deputy Nugent. They had a warrant for the arrest of defendant. Upon their knocking on the door, defendant, knowing that officers were at the door, opened same. When he did so, he, being in a doorway or threshold, was standing in a place that has been classified as a "public" place which place is not amenable to the restrictions of the Fourth Amendment. An arrest made in such a "public" place, pursuant to an arrest warrant, does not violate the Fourth Amendment. The fact that he may have retreated into the house would not otherwise thwart a valid arrest. United States v. Santana, supra.
The basis of this "threshold" rule is that an open doorway is a "public" place, thus, no distinction is to be drawn between a doorway of a person's own house or that of a third person (as was the case here). The rule is applicable to both situations.

VOLUNTARINESS OF CONFESSION
The defendant argues that his confession was not voluntary and thus inadmissible. Defendant testified at the hearing of the motion to suppress that the sheriff hit him several times on the head and told him if he did not cooperate he would "have the judge come down hard" on him. This allegedly took place during the trip from Shreveport to Colfax. Defendant further testified that when they reached Grant Parish the sheriff talked to him alone in the sheriff's office. In relating his version of the conversation between himself and the sheriff in the sheriff's office, defendant testified as follows:
"Q. Did the Sh ... Did he say anything to you while in that office about his being able to held you?

"A. Yes, he did.

"Q. What did he say to you about his being able to help you?
"A. Okay, he told me, he say, he say, listen, he say, you know, I know what you are charged with, and he say, I have certain circumstantial evidence showing that you didn't rape Mrs. Snyder, he say, I know this for a fact, he say, but you have no other alternative but to give a statement because you are charged with raping a white woman, and you know a judge and jury won't believe you here in Grant Parish, and then you know, he told me to give a statement and he said that he would talk to the judge. Said he would talk to the judge.
* * * * * *

*676 "Q. Mr. Haynie, did the sheriff tell you how giving a statement would help you?

"A. He said that it would show that I cooperated and that the judge would go easier on me.
"Q. Did he explain to you how cooperating might cause the judge to go easy on you?
"A. He didn't exactly explain it, you know, that is just the way he said it, and and then he told me he would try to have me out of here in no time."
Defendant further stated that he would not have given the statement had it not been for the sheriff's threats and promises.
The defense urges that the state has failed in establishing the voluntariness of the confession in failing to rebut these specific allegations of threats and promises. The two officers accompanying the sheriff and defendant on the trip to Colfax both testified that no threats or promises were made to the defendant during the trip to Colfax and that the sheriff did not strike the defendant. Both officers admit to having dozed off periodically during the trip. The driver, however, testified that he heard the entire conversation between the defendant and the sheriff and that defendant's allegations were false.
The law is clear that before a confession can be introduced into evidence, the state is required to affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. State v. Robinson, 384 So.2d 332 (La.1980); State v. Jackson, 381 So.2d 485 (La.1980); La.R.S. 15:451. The admission of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are not supported by the evidence. State v. Gaines, 354 So.2d 548 (La.1978); State v. Hutto, 349 So.2d 318 (La.1977); State v. Adams, 347 So.2d 195 (La.1977).
However, as set forth in State v. Bouffanie, 364 So.2d 971, at 973 (La.1978), due to the state's burden of proving voluntariness, it must:

"rebut specific testimony introduced by the defendant concerning factual circumstances which indicate coercive measures or intimidation. [citations omitted]."
In addition, this court has repeatedly warned that the state cannot simply rely on general testimony of officers not present that they witnessed no coercion, intimidation or other undue influence. State v. Franklin, 381 So.2d 826 (La.1980); State v. Monroe, 305 So.2d 902 (La.1974).
In light of the testimony of three officers accompanying the defendant and the sheriff to Colfax, there has been sufficient rebuttal of the defendant's allegations concerning the events which took place on the trip to Colfax. However, there is no rebuttal of the allegations made by the defendant concerning alleged promises and inducements by the sheriff during the private interview in the sheriff's office.
We are particularly concerned with the failure of the state to call the sheriff for any rebuttal of the promises to which defendant testified as having occurred in the sheriff's office.
In the recent case of State v. Jackson, 381 So.2d 485, 486 (La.1980), this court stated as follows:
"The United States Supreme Court has held that confessions obtained by `any direct or implied promises, however slight, or by the exertion of any improper influence' is involuntary and inadmissible as a matter of constitutional law. Bram v. United States ... 168 U.S. 532, 542-543, 18 S.Ct. 183 [186-187], 42 L.Ed. 568 (1897). The rationale of Bram is that even slight inducements held out by a person in authority such as a police officer or prosecuting attorney may render a confession involuntary because the person accused would believe that such an authoritative person is credible and in a position to give effect to the inducement....."
*677 Due to the serious nature of any possible inducement we must conclude that the trial judge erred in his denial of the motion to suppress the confession without testimony to rebut the defendant's allegations of inducement. We will remand the case for a new trial of the Motion to Suppress.
Accordingly, the ruling of the trial court, denying the defendant's Motion to Suppress is set aside and the case is remanded for a new trial of the Motion to Suppress.
REVERSED AND REMANDED.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., concurs with reasons.
DIXON, C. J., dissents and assigns reasons.
CALOGERO, Justice, concurring.
I agree with the majority opinion that C.Cr.P. art. 202 does not require that the facts and circumstances establishing probable cause for the issuance of an arrest warrant must appear in a written affidavit. Nor do I feel that such a presentation of the facts (by affidavit) is constitutionally required, for Article 1, Section 5 of the Louisiana Constitution of 1974 merely provides, in pertinent part, that "No warrant shall issue without probable cause supported by oath or affirmation...."
While the facts establishing probable cause may be presented by written affidavit, and as pointed out by the majority that is certainly the preferred method, they may also be orally presented to the judge, provided they are presented to him prior to the issuance of the warrant. It would not suffice for the officer to possess the facts establishing probable cause and to obtain an arrest warrant without first, whether by written affidavit or through oral presentation, giving those facts to the judge.
As pointed out in the majority opinion, C.Cr.P. art. 202 does not mandate the use of a written affidavit to obtain an arrest warrant as is the case under C.Cr.P. art. 162, for search warrants. Certainly inclusion of the facts in a written affidavit is preferred to minimize after the fact evidentiary disputes. However, unless the Legislature sees fit to amend C.Cr.P. art. 202 to require that the facts be presented by affidavit, as is the requirement for search warrants, such a requirement cannot be read into the statute.
As noted in the majority opinion, our holding on this issue is further supported by the recent United States Supreme Court decision in Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). In Whiteley, after concluding that the affidavit was insufficient, the Court considered what other information the officer had at the time he obtained the warrant and held that the facts were insufficient to support the "independent finding of probable cause by a disinterested magistrate." The Court did not find that it was constitutionally required that the facts establishing probable cause for an arrest warrant appear within the four corners of a written affidavit.
In the present case, the state met its burden by calling the officer who obtained the warrant to testify as to what facts he told the magistrate to establish probable cause for the issuance of the warrant. I suggest that because we find it constitutionally and statutorily permissible to present the facts and circumstances establishing probable cause orally rather than by written affidavit, the defense will be free to dispute the police officer's testimony in a similar manner, including the calling of the issuing magistrate as a witness.
Furthermore, while I agree with the majority that the issue of whether a search warrant is necessary in addition to an arrest warrant to perfect an arrest in a third party's home is not before us in this case because the subject of the arrest warrant answered the door making a search of the premises unnecessary, I disagree with the majority opinion that a person in the doorway of his home, because summoned there by the call of a visitor, is in a "public place".
Rather than justify the arrest without a search warrant because the defendant was in a "public place", i. e., the open doorway, I *678 would find that the absence of the search warrant was of no consequence because the officers did not search the third party's home.
For the above reasons, I respectfully concur.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
Under the Louisiana Constitution (Art. 1, § 5), no distinction is made between search warrants and arrest warrants. Neither "... shall issue without probable cause supported by oath or affirmation, ... particularly describing the place to be searched, the persons or things to be seized, ..." The Fourth Amendment of the United States Constitution is almost identical. The oath or affirmation must be in writing.
LEMMON, Justice, concurring in denial of application for rehearing.
I concur in the denial of the application for rehearing, for the reasons stated by Justice Calogero on original hearing.
NOTES
[*] Judges Cecil C. Cutrer, Jimmy M. Stoker and Ned E. Doucet, Jr., of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices ad hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Pascal F. Calogero, Jr., James L. Dennis and Jack C. Watson.
[1] A copy of the bill does not appear in the record. Defendant was arrested pursuant to a warrant alleging aggravated burglary and aggravated rape. A minute entry dated March 10, 1980 states that the grand jury returned a bill of forcible rape.
[2] The requirements for an affidavit for the issuance of a search warrant are set forth in Louisiana Code of Criminal Procedure art. 162 which provides as follows:

"A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
"A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure."
[3] A search of the house for evidence was made by these police but none was recovered. We are not called upon to pass upon this search.