702 So.2d 1194 (1997)
STATE of Louisiana
v.
Alfred LABOSTRIE.
No. 96-KA-2003.
Court of Appeal of Louisiana, Fourth Circuit.
November 19, 1997.
*1195 Harry F. Connick, District Attorney of Orleans Parish, Richard R. Pickens, Assistant District Attorney of Orleans Parish, Orleans Parish, New Orleans, for State.
Elizabeth W. Cole, Christie J. Foster, Tulane Law Clinic, New Orleans, for Defendant.
Before PLOTKIN, JONES and CIACCIO, JJ.
PLOTKIN, Judge.
This appeal raises two issues: whether or not the inculpatory statements of the defendant were improperly admitted; and whether or not the trial court erred in admitting hearsay testimony. We find that the confessions of the defendant were properly admitted, *1196 but that inadmissible hearsay was introduced at trial. However, we find this error harmless and affirm the appellant's convictions.

PROCEDURAL HISTORY:
On August 17, 1995, the appellant, Alfred Labostrie, was charged with four counts of armed robbery and two counts of attempt armed robbery. All six counts arise out of two bank robberies.[1] After pleading not guilty, a twelve-person jury found defendant guilty as charged on all four armed robbery counts (counts one, two, four, and five), guilty as charged on one of the attempt armed robbery counts (count three), and guilty of attempt first degree robbery on the remaining count (count six). The court the sentenced him to serve ninety-nine years at hard labor on count one, fifty years at hard labor on counts two, three, four, and five, and twenty years at hard labor on count six. The court ordered all sentences to be served without the benefit of parole, probation, or suspension of sentence. The sentence imposed in count one is consecutive to the concurrent sentences imposed in connection with counts two through six. The defendant now appeals these convictions.

FACTS:
Shortly after 9:00 a.m. on September 14, 1994, the Hibernia National Bank located in the 4300 block of Magazine Street was robbed by a lone gunman. Employees of the bank testified that they saw a man enter carrying a white bag. He then pulled a gun and ordered the employees to lie on the floor. Two tellers immediately complied, however, a third employee did not. The gunman forced the third employee, a pregnant woman, to the ground. One of the workers was able to hit the alarm button without the gunman noticing. With all three employees laying on the floor, the gunman filled his bag with money from the tellers' drawers. The man then left the bank, taking with him approximately $19,000. Later that evening, the three employees were shown a photographic lineup but none of the three could identify anyone. However, approximately one month later, they were shown a different photographic lineup, and two employees identified the defendant Alfred Labostrie as the man who robbed them. At trial, all three employees identified Labostrie as the robber.
At approximately 10:00 a.m. on September 26, 1994, the Algiers branch of the Mississippi River Bank was robbed by four armed men. Employees of that bank testified that one of the men placed a gun to the head of an employee who was talking on the telephone. The employees and a customer were ordered to lie on the floor. While two of the men remained in the lobby area, the other two jumped behind the teller area. One of the tellers was able to activate the surveillance camera. The men in the teller area ordered one employee to fill a pillowcase with money from her drawer and also seized money from other teller drawers. The men took $3000 from one teller's drawer and $15,000 from another drawer. They then left the bank.
Two of the tellers were later shown photographic lineups. One teller identified Labostrie and Edward Charles Thomas as the armed men who stayed in the lobby area of the bank during the robbery. Another teller identified Thomas and also identified David Monroe as one of the men who was in the teller area. However, she was unable to identify Labostrie. The third teller did not view any lineups because she was on vacation at the time the police took the photographs to the bank. All three tellers, however, viewed surveillance photographs which purportedly showed Labostrie, Thomas, Monroe, and a heavyset man in the bank during the robbery. The teller who identified Labostrie testified she viewed the surveillance photographs after she viewed the lineup; the teller who made the other identifications was not sure if she saw the surveillance photographs before or after she viewed the lineups. The third teller, who did not view any lineups, testified she saw the surveillance photographs before the police produced the photographic lineups.
During the investigation of these robberies, the police obtained an arrest warrant for *1197 Edward Thomas and a search warrant for his residence. Inside the residence, officers seized clothing, including hats, which were similar to those used by the robbers of the Mississippi River Bank. The officers eventually arrested Thomas, who gave a statement inculpating himself, Labostrie, Monroe, and a man he knew only as "Fat Ronnie." Labostrie was arrested and eventually gave two statements wherein he admitted his involvement in both robberies. With respect to the Mississippi River Bank robbery, he implicated Thomas, Monroe, "Fat Ronnie," and another man named Joseph Tadlock, who apparently was the driver of the getaway van. In his statement concerning the latter robbery, Labostrie stated he and Thomas remained in the lobby area with their guns on the employees while Monroe and Ronnie went behind the teller area and took the money. He admitted his share of the proceeds of the robbery was $700. In a second statement given a few hours later, he admitted he robbed the Hibernia National Bank, using a car he borrowed from another man. He indicated he got away with approximately $10,000 from that robbery.

ERRORS PATENT:
A review of the record for errors patent reveals one error. The trial court imposed an unconstitutionally excessive sentence as to the appellant's conviction on count three. The appellant was convicted of attempt armed robbery and was sentenced to serve fifty years at hard labor. However, because the maximum sentence for armed robbery is ninety-nine years, the maximum sentence for attempt armed robbery is forty-nine and one-half years. See La. R.S. 14:27; 14:64. Thus, the trial court exceeded the maximum sentence for count three, and that sentence is hereby amended from fifty years to forty-nine and one-half years.

ASSIGNMENT OF ERROR 1:
By his first assignment of error, the appellant contends the trial court erred by denying his motion to suppress his two confessions. Specifically, he argues the State failed to show the statements were voluntarily made because the only officer to testify concerning these statements could not conclusively state he was present during the entirety of these statements.
The State has the burden to prove, beyond a reasonable doubt, that a statement made by a defendant was freely and voluntarily given and was not the product of threats, fear, intimidation, coercion or physical abuse. State v. Seward, 509 So.2d 413 (La.1987); State v. Bourque, 622 So.2d 198 (La.1993). Thus, the State must prove that the accused was advised of his/her Miranda rights and voluntarily waived these rights in order to establish the admissibility of a statement made during custodial interrogation. State v. Brooks, 505 So.2d 714 (La.1987); cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Daliet, 557 So.2d 283 (La.App. 4th Cir.1990). A waiver of Miranda rights need not be explicit but may be inferred from the actions and words of the accused, however, an express written or oral waiver of rights is strong proof of the validity of the waiver. North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); State v. Harvill, 403 So.2d 706 (La.1981). Whether a statement was voluntary is a question of fact; thus, the trial judge's ruling, based on conclusions of credibility and the weight of the testimony, is entitled to great deference and will not be disturbed on appeal unless there is no evidence to support the ruling. State v. Parker, 96-1852 pp. 12-13 (La.App. 4th Cir. 6/18/97), 696 So.2d 599, 606.
The appellant argues the State failed to prove the statements he gave were voluntary because, Detective Crespo, the only witness who testified regarding these statements could not conclusively state that he was present for the entire statement. Detective Bateman, the officer who actually questioned the appellant during the statements, left the police force by the time of trial, and for reasons unknown the State did not call her to testify. Instead, the State relied upon Detective Crespo, who insisted he was present each time the appellant was advised of his rights and was also present when the appellant reviewed the typed statements and signed them. He also testified that no one used any force, coercion, threats or physical violence to compel the defendant to confess *1198 to the crimes. Therefore, the State proved beyond a reasonable doubt that the two confessions by defendant were freely and voluntarily furnished. The burden then shifted to the defendant to rebut the presumption of legitimacy.
The appellant argues that because Detective Crespo could not positively state he was present during the entirety of the statements, the State failed to prove the statements were voluntary. However, it does not appear the officer's possible absence during the actual giving of the statements would support a finding that the State failed to show the statements were voluntarily given. No evidence was introduced to contradict the officer's testimony that the statements were freely and voluntarily given. Furthermore, this Court held in State v. Gibson, 93-0305 (La.App. 4th Cir. 10/13/94), 644 So.2d 1093, 1097, that the testimony of police officers alone can be sufficient to prove that a defendant's statement was freely and voluntarily given.
Moreover, the appellant does not allege the typed statements do not accurately reflect what actually transpired. In fact, Detective Crespo testified that he was present when the appellant reviewed the statements and signed them; the defendant did not rebut this proposition. Also, defendant does not contend he was not fully advised of his Miranda rights. Instead, he appears to argue that Detective Crespo's testimony, that the appellant was fully advised of his rights and that he waived these rights in the absence of any coercion, threats, force, or promises, is insufficient to show voluntariness.
Additionally, the appellant did not either pretrial or at trial, nor does he now, allege that the statements were the result of force, coercion, threats, or promises. In support of his assertion that Detective Crespo's testimony stating that the police did not force threaten, coerce, or promise the appellant anything was insufficient to show the statements were voluntary, the appellant cites State v. Haynie, 395 So.2d 669 (La.1981). Haynie is easily distinguishable from this case. In Haynie, the defendant testified at the suppression hearing concerning physical abuse and threats he received at the hands of various police officers while being transported to the police station. In response to these allegations, the State presented the testimony of various witnesses to rebut these claims. But, the Court found that the State failed to rebut the defendant's further allegation of promises and coercion in the sheriff's office. The Court noted that the State was obligated to rebut specific allegations of threats, force, coercion, or promises in order to show that a statement was voluntary.
Here, by contrast, there has not been any specific allegation of any force, threat, coercion, or promises causing the appellant to give the two statements. Detective Crespo's testimony concerning the lack of these inducements, along with his testimony concerning the advisement of the appellant's rights and his reading and signing of the statements once they were typed, was sufficient to show the statements were voluntary. Moreover, the defendant failed to demonstrate how he was prejudiced by Detective Crespo's possible periods of absence while he was giving his statements. Therefore, because the State proved beyond a reasonable doubt that the confessions were free and voluntary, the burden shifted to the defendant to try to rebut them. The defendant did not present any evidence in rebuttal. Thus, the trial court did not err by refusing to suppress the two confessions.
This assignment has no merit.

ASSIGNMENT OF ERROR 2:
By his second assignment, the appellant contends the trial court erred by allowing the State to introduce hearsay evidence that criminated him. Specifically, he points to the testimony of Detective Crespo, who was allowed to testify that another suspect told him that the appellant was involved in the robbery of the Mississippi River Bank. During the direct examination of the Detective, he testified that the initial suspect in the case was arrested and gave a statement. Over the objection of the defense, the following occurred:
Q. Detective, did Mr. Thomas then give you a statement?
A. Yes, sir, he did.

*1199 Q. Based on the statement that Mr. Thomas, gave you, who were your suspects?
BY MS. COLE:
Objection, Your Honor. Again, it's hearsay. It's simply another way
BY MR. LANDRIEU:
Mr. Thomas will be here to testify, Judge.
BY MS. COLE:
Well, if he's here to testify, then we don't need the question.
BY THE COURT:
Again, what was your question?
BY MR. LANDRIEU:
Based on the information that you learned from Mr. Thomas, who were your suspects?
BY THE COURT:
You can answer that.
BY THE WITNESS:
A. Alfred Labostrie, David Monroe and subject still known as Fat Ronnie and Mr. Thomas implicated himself as a participant.
The appellant now argues the trial court erred by allowing Detective Crespo to testify that Thomas implicated him because such statement constituted hearsay.[2]
La. C.E. Art. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Art. 802 provides: "Hearsay is not admissible except as otherwise provided by this Code or other legislation." The question to which the appellant objected produced a hearsay response. The answer was introduced to prove the truth of the matter asserted, that the appellant became a suspect based upon what Thomas stated. As such, the trial court erred by overruling the defense objection to the question.
The State argues the question and the answer were admissible to "explain the sequence of events leading to the arrest of the defendant from the viewpoint of the arresting officers," quoting from State v. Edwards, 406 So.2d 1331, 1349 (La.1981), cert. denied, Edwards v. Louisiana, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982). However, the State fails to mention that this reasoning was sharply limited by the Court in State v. Hearold, 603 So.2d 731, 737-38 (La.1992), where the Court stated:
Generally, an explanation of the officer's actions should never be an acceptable basis upon which to admit an out-of-court declaration when the so-called "explanation" involves a direct assertion of criminal activity against the accused ... Absent some unique circumstances in which the explanation of purpose is probative evidence of a contested fact, such hearsay evidence should not be admitted under an "explanation exception." The probative value of the mere fact that an out-of-court declaration was made is generally outweighed greatly by the likelihood that the jury will consider the statement for the truth of the matter asserted.
This court expounded on the Hearold standard in State v. Lavigne, 95-0204, p. 4 (La. App. 4th Cir. 5/22/96), 675 So.2d 771, 775, writ denied, 96-1738 (La.1/10/97), 685 So.2d 140. In that case, we found that testimony regarding an informant's tip may violate the accused's constitutional right to confront and cross-examine the witnesses against him. Moreover, in State v. Guy, 95-0899 (La.App. 4th Cir. 1/31/96), 669 So.2d 517, 525, writ denied, 96-0388 (La.9/13/96), 679 So.2d 102, we found that the issue of relevancy is intertwined with the hearsay issue. Thus, although information obtained from an informant may be relevant, the danger of allowing hearsay into evidence must be weighed against the level of relevancy. In that case, after conducting this balancing test, this court upheld the trial court's admission of the part of the contents of a Crimestoppers' tip. Id. We noted the contents of the tip were hearsay, but because the defendant challenged the reliability of the tipster, the hearsay was admissible. Thus, the hearsay testimony "was not used as a passkey to bring before the jury the substance of out of court information that would otherwise be *1200 barred by the hearsay rule." Guy, 669 So.2d at 526.
The special circumstances present in Guy are not present here. The statement to which the appellant objected, that Thomas had implicated him in the robberies, was hearsay and was improperly admitted. However, it does not appear that this error mandates the reversal of the appellant's conviction.
In Lavigne, the officers testified as to what they were told when they answered a call of a crime being committed. This court held these statements were hearsay, but also found their admission constituted harmless error. Likewise, in State v. May, 94-1205 (La.App. 4th Cir. 4/26/95), 654 So.2d 829, this court found the trial court erred by allowing an officer to testify that a witness who was missing at the time of trial knew the defendant. Again, however, this court found such admission to be harmless. As noted by this court in Lavigne: "Nonetheless, introduction of statements objected to as hearsay which are merely corroborative and cumulative of other testimony presented by the state is harmless error." Lavigne, 675 So.2d at 775.
Notwithstanding the hearsay testimony, the State still proved its case beyond a reasonable doubt. The defendant was positively identified by several of his victims through photographic line-ups and in the courtroom. The prosecution also introduced a photograph of the defendant, taken by a surveillance camera during the commission of one of the robberies. Moreover, the defendant confessed to both crimes. Thus, the officer's hearsay statement that Thomas incriminated the appellant is merely cumulative to the other evidence introduced at trial and constitutes harmless error.
This assignment has no merit.
Accordingly, we find that the trial court did not err when it denied the defendant's motion to suppress the two confessions; but that it did err when it allowed hearsay testimony to be presented. However, we find that the use of this hearsay evidence was merely cumulative to the abundance of evidence presented by the State and constituted harmless error. Thus, all of the appellant's convictions and his sentences on the armed robbery and attempt first degree robbery convictions are affirmed. His sentence on the attempt armed robbery conviction is amended from fifty years to forty-nine and one-half years.
CONVICTIONS AFFIRMED; SENTENCES FOR ARMED ROBBERY AND ATTEMPT FIRST DEGREE ROBBERY AFFIRMED; SENTENCE FOR ATTEMPT ARMED ROBBERY AMENDED.
NOTES
[1] In three of the counts, David Monroe and Edward Thomas were also charged. However, neither of these defendants were tried with the appellant and are thus not a part of this appeal.
[2] Edward Thomas did not ultimately testify at trial.