764 So.2d 93 (2000)
STATE of Louisiana
v.
Charleton G. RUSSELL.
No. 98-KA-2773.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 2000.
Rehearing Denied July 17, 2000.
*94 Harry F. Connick, District Attorney, Cate L. Bartholomew, Assistant District Attorney, New Orleans, Louisiana, Counsel for Plaintiff.
Dwight Doskey, New Orleans, Louisiana, Counsel for Defendant/Appellant.
(Court composed of Chief Judge ROBERT J. KLEES, Judge WILLIAM H. BYRNES, III, Judge MICHAEL E. KIRBY).
KIRBY, Judge.
The defendant, Charleton Russell, was charged by bill of information on August 7, *95 1996 with possession of twenty-eight or more grams, but less than two hundred grams, of cocaine, a violation of La. R.S. 40:967(F)(1). A jury found him guilty as charged. Defendant filed motion for new trial, which was denied. Defendant waived all delays and the trial court sentenced him to ten years at hard labor without benefit of parole, probation, or suspension of sentence.

STATEMENT OF THE FACTS
Sergeant Samuel Poole testified that on June 24, 1996, he, Detective John Brunet, and Officer Clarence Mitchell had just finished dinner at the St. Charles Tavern when they saw a green Dodge Avenger pull into the parking lot. Poole further testified that after they saw defendant and another man in the Dodge, they decided to monitor the men's activities. Poole stated that he and Officer Mitchell relocated a block and a half away to the corner of Erato and St. Charles Avenue and communicated with Brunet on the radio. He returned to the parking lot twenty to thirty minutes later and blocked in the Dodge based on information provided to him by Brunet. Poole testified that he and Mitchell approached the vehicle with their guns drawn because they believed that a narcotics transaction was taking place. Poole went to the passenger side of the vehicle, while Mitchell went to the driver's side; and, they ordered defendant and the other man out of the car. They were taken to the rear of their car, handcuffed, and made to lie on the ground. Poole testified that when he opened the door of the car, he saw gray duct tape, which he said was used to seal and conceal illegal contraband. He also saw a brown pouch on the passenger side floorboard and a large plastic bag with white powder protruding from under the passenger seat. Defendant and the other man, who was named Michael Duckett, were later taken to the Sixth District where defendant gave a statement. Defendant told the police that Duckett had only wanted a ride and had nothing to do with the cocaine in the car. The white powder in the plastic bag was tested and found to be cocaine. It weighed seventy-seven grams.
Detective John Brunet testified that he, Poole, and Mitchell were in the parking lot closest to St. Charles and Melpomene when they decided to place defendant under surveillance. He stated that he moved his vehicle to the side parking lot next to the Walgreen's and that defendant's car was two or three parking spots from the end of the Walgreen's building, which he said was about fifty feet away from his position. Brunet testified that an unidentified subject exited defendant's vehicle and walked around the area at the front of the Walgreen's where the pay telephones are located. He also saw defendant in the driver's seat; but, defendant exited the car, used the pay phone, spoke with the other man, and returned to his car. Brunet then saw Duckett walk up to defendant's car and talk to defendant. He said that defendant slid over into the passenger seat, and Duckett got into the driver's seat. Brunet further stated that the unidentified man continued walking around and checking the parking lot. Brunet saw defendant reach under the front seat and obtain a package, which defendant and Duckett viewed. Brunet stated that he notified Poole that a possible transaction was about to take place. Poole and Mitchell arrived a few minutes later to block in defendant's car and detain him and Duckett. Brunet did not participate in the detention, and he did not pursue the unidentified man. Brunet stated that the lighting conditions at the time were good and that it was still daylight outside. He admitted that the windows on defendant's car were tinted, but he said that he did not have any trouble seeing inside the car.
Darries Boyd testified that his father owned the green Dodge Avenger and that he was the principal driver of that car. He stated that he lent it to defendant, with whom he had been friends since junior high school, on June 24th. He further testified that the windows on the car had a *96 dark tint and that he had been previously stopped by the police for that reason. He also stated that the windshield was not tinted and that the car did not have an interior light. Boyd testified that he had not known defendant to be involved with cocaine or drug dealers.
Shawntrell George testified that defendant was her boyfriend and that she could barely see inside the Dodge Avenger. She also stated that she had never seen defendant possess drugs or large sums of money.
Brunet was called back to the witness stand; and, he stated that from his personal experience, he knows that the Dodge Avenger had an interior light because every time the car's door was opened, the light came on. He further stated that he was behind the vehicle and slightly to the right and that Duckett's door remained slightly open.

ERRORS PATENT
A review of the record shows an error patent with regard to defendant's sentence. La. R.S. 40:967(F)(1)(a) provides that one convicted of possession of more than twenty-eight grams, but less than two hundred grams, of cocaine shall be sentenced to a term of imprisonment of not less than ten years and not more than sixty years and to payment of a fine of not less than $50,000 and not more than $150,000.[1] The sentence imposed on defendant is illegally lenient in that the trial judge failed to order payment of a fine; but because this is an error patent favorable to defendant and the State has not complained, the illegally lenient sentence cannot be corrected on appeal. State v. Fraser, 484 So.2d 122 (La.1986); State v. Samuels, 94-1408 (La.App. 4 Cir. 6/7/95), 657 So.2d 562. There are no other errors patent.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, defendant complains that the trial court erred in denying his motion to suppress the evidence. He argues that the police did not have articulable grounds for believing that a crime was occurring, had occurred, or was about to occur under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). He also argues that the police never articulated any probable cause for a search. He points out that the police saw no exchange of money for a small object and that there was no testimony that the police acted upon a specific tip from a reliable confidential informant or that the area had a bad reputation for narcotics trafficking.
At the hearing on the motion to suppress, the only witness the State presented was Sergeant Poole, whose testimony was essentially the same as that from the trial except for the following differences. He testified that when he saw defendant first drive up, he told Detective Brunet that he had received information that defendant would meet people in parking lots and make drop-offs. He stated that on the day in question, he was not acting directly in response to a tip from a confidential informant, but was spontaneously reacting when he saw defendant. He also stated that while Brunet was conducting the surveillance of defendant, Brunet told him that defendant and the other man (Duckett) were fumbling around and passing something back and forth to each other. Poole said that he was not going to let the subjects leave the parking lot and that he was going to find out what they were doing. Poole testified that as he returned to the parking lot, he saw the unidentified man who had first been with defendant start to motion frantically to the subjects in the vehicle. Poole also said that this man whistled to defendant and Duckett as Poole and Mitchell exited their police unit *97 and approached the vehicle. He testified that Duckett opened the door and tried to get out of the vehicle and that he and Mitchell had their weapons drawn as they ordered defendant and Duckett to exit the car with their hands raised. Poole said that he went to the passenger side of the vehicle and that as he removed defendant from the vehicle, he saw defendant drop a brown pouch onto the floorboard. He also said that he smelled the aroma of cocaine in the car and that after finding the plastic bag containing the white powder, he placed defendant and Duckett under arrest.
Defendant testified at the motion to suppress hearing that he went by himself to the Walgreen's to buy fruit punch. He stated that he got out of the car, locked it, and went into the drug store to buy the fruit punch and that as he left the store after making his purchase, he saw Michael Duckett. He stated that he knew Duckett from playing basketball but did not really know him and that Duckett asked him for a ride to the bus stop. Defendant testified that he went to the passenger side of the car to unlock it because the door lock on the driver's side was broken. Defendant said that he got in on the passenger side while Duckett got in the driver's side because he was going to let Duckett drive to the bus stop. He also said that they sat there for about five minutes, and he denied retrieving anything from underneath the passenger seat. Defendant testified that he sat in the car reading the papers for his student loan when the police came up, put guns in their faces, and ordered them out of the car. He admitted throwing a brown leather pouch that was on the passenger seat into the back of the car so he could sit down. He also admitted seeing the plastic bag containing the white substance prior to the arrival of the police, but he denied removing it from underneath the passenger seat while Duckett was in the car with him.
A police officer has the right to detain briefly and interrogate a person when he has a reasonable articulable suspicion that the person is, has been, or is about to be engaged in criminal conduct. La.C.Cr.P. art. 215.1; State v. Tucker, 626 So.2d 707 (La.1993); State v. Andrishok, 434 So.2d 389 (La.1983). "Reasonable suspicion" is something less than probable cause, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of an individual's right to be free from governmental interference. State v. Johnson, 94-1170 (La. App. 4 Cir. 8/23/95), 660 So.2d 942, writ denied, 95-2331 (La.2/2/96), 666 So.2d 1092 and writ denied by State v. Dibartolo, 95-3044 (La.2/2/96), 666 So.2d 1105; State v. Finne, 92-2555 (La.App. 4 Cir. 2/11/94), 632 So.2d 819. Mere suspicious activity is not a sufficient basis for police interference with an individual's freedom. State v. Williams, 421 So.2d 874 (La.1982). The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). An investigative stop must be justified by some objective manifestation that the person to be stopped is or is about to be engaged in criminal activity, or else there must be reasonable grounds to believe that the person is wanted for past criminal conduct. State v. Moreno, 619 So.2d 62 (La.1993).
In State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, the police received an anonymous telephone call from a concerned citizen that a person, known as Will who drove a dark green Pontiac, was involved in the sale of drugs in the Magnolia Housing Project. The caller gave a description of Will and stated that his car would be parked in the 2800 block of Magnolia when he was not dropping off narcotics. After the police went to the 2800 block of Magnolia and saw the car, they set up surveillance and saw the car drive away. They followed the car until it *98 parked in the 2500 block of Sixth Street, and they saw that the driver matched the description given by the caller. The officers approached the driver, who was the defendant, and asked him his name. After the defendant gave them his name, William Robertson, the officers informed him that he was under investigation for narcotics. A canine detection unit was called and arrived some ten to fifteen minutes later. The dog indicated that there were narcotics inside the car, and one of the officers retrieved a bag filled with crack cocaine. The trial court denied the defendant's motion to suppress the evidence, but the Supreme Court reversed. The court found that the officers did not have reasonable suspicion to conduct an investigatory stop of the defendant based upon the anonymous tip and the subsequent corroboration by the officers. The court noted that Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), stressed corroboration and predictiveness in assessing reasonable suspicion for a stop pursuant to an anonymous tip and that the officers who had stopped the defendant corroborated certain aspects of the tip. The court further found that the tip had no predictive information from which the officers could reasonably determine that the informant had inside information or a special familiarity with the defendant's affairs. The court further stated that the police were not powerless to act upon the non-predictive, anonymous tip and that they could have set up more extensive surveillance of the defendant until they observed suspicious or unusual behavior. If after corroborating the readily observable facts, the officers noticed unusual or suspicious conduct by the defendant, they would have had reasonable suspicion to detain him.
Clearly, whatever information the police had about defendant in the present case was not sufficient in and of itself to justify an investigatory stop. However, the police did not act solely upon that information in deciding to detain defendant. Unlike the police in Robertson, the officers here waited until defendant engaged in suspicious behavior before approaching defendant. The cocaine in the plastic bag was lawfully seized as being in plain view when Poole saw it. In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Supreme Court held that in order for a warrantless search and seizure to fall under the "plain view doctrine," there must be a prior justification for police intrusion in a protected area; the evidence must be discovered inadvertently; and it must be immediately apparent, without close inspection, that the item is evidence or contraband. However, the requirement of inadvertence is no longer necessary. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). The "immediately apparent" element requires that the officer have probable cause to believe that an item is contraband. Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). But if the officer lacks probable cause to believe that an item in plain view is contraband without conducting a further inspection of the object because its incriminating character is not immediately apparent, the plain view doctrine cannot justify its seizure. Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Poole had probable cause to believe that the white powder was cocaine based upon his testimony that he could smell cocaine. Therefore, the trial court did not err in denying defendant's motion to suppress the evidence. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant complains that the trial court erred in denying a challenge for cause for prospective juror, Jodie Rozencwaig, who stated that she did not believe that a police officer would lie on the witness stand. A review of the voir dire transcript does not indicate that defendant sought a challenge for cause as to Ms. Rozencwaig; therefore, defendant has failed to preserve this issue *99 for appellate review. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
In his third assignment of error, defendant complains that the trial court erred in concluding that State v. Dorthey, 623 So.2d 1276 (La.1993), applied only to sentences under a multiple bill, not to legislatively minimum sentences. He argues that he should have had the chance to make the showing that he deserved a lesser sentence, if not probation, and requests that the case be remanded to the trial court for a hearing on mitigating circumstances.
At the sentencing hearing, defendant argued that the trial judge had the authority under State v. Dorthey to find that the minimum mandatory sentence was unconstitutional even out of the multiple bill context. The trial judge disagreed and stated that the Legislature was aware of the specific violation involved and set a specific minimum sentence.
In State v. Hebert, 94-2223 (La.App. 4 Cir. 3/16/95), 652 So.2d 1049, the defendant pleaded guilty to possession of heroin; and the trial court sentenced him to five years active probation. The sentence was vacated on appeal because La. R.S. 40:983 prohibited parole eligibility where the defendant had prior convictions under Title 40. On remand, the trial court resentenced the defendant to four years, which was suspended, and the defendant was given five years active probation pursuant to State v. Dorthey. On the State's writ application, this court held that Dorthey was specifically limited to an enhanced sentence under La. R.S. 15:529.1 and did not apply to a mandatory minimum sentence imposed by the substantive criminal statute. The court stated that there was nothing in Dorthey that authorized a trial court to disregard the legislatively mandated sentencing provisions of a substantive, unenhanced criminal statute.
However, in State v. Fobbs, 99-1024 (La.9/24/99), 744 So.2d 1274, the Supreme Court stated:
Our observation in State v. Dorthey, 623 So.2d 1276, 1280 (La.1993), that "the review of sentencing, including sentencing under R.S. 15:529.1, is a long established function of the judicial branch," does not, nor did we intend it to, restrict the sentence review principles espoused in that decision solely to the mandatory minimum penalties provided by La. R.S. 15:529.1. See State v. Davis, 94-2332, pp. 11-12 (La.App. 1st Cir. 12/15/95), 666 So.2d 400, 407-08. As we explained in State v. Sepulvado, 367 So.2d 762, 766, (La.1979), La. Const. Art. 1, § 20 provides "the basis for extending the court's control over the entire sentencing process." (emphasis added).
Fobbs was remanded to this court, which ruled on whether the trial court could sentence the defendant to an eight year suspended sentence and five years active probation despite the fact that the substantive statute prohibited suspension for the first five years of the sentence. The court noted that in State v. Barberousse, 480 So.2d 273 (La.1985), the Supreme Court had suggested that a mandatory minimum sentence that was not the result of a multiple bill might be unconstitutional. The court affirmed the sentence considering the facts and circumstances showing that imposition of the mandated minimum sentence would have made no measurable contribution to the acceptable goals of punishment. State v. Fobbs, 99-0073 (La.App. 4 Cir. 11/24/99), 747 So.2d 1232.
Accordingly, we find that the trial court erred in concluding that Dorthey applied only to sentences under the Habitual Offender Law and that he could not consider whether the mandatory minimum sentence would have been excessive as applied to defendant considering all of the facts and circumstances. This case will be remanded to the trial court to determine whether the mandatory minimum sentence would be excessive under State v. Dorthey.

*100 PRO SE ASSIGNMENT OF ERROR NO. 1

In his first pro se assignment of error, defendant complains that the trial court erred in denying his motion to suppress the confession. He argues that his statement was not freely and voluntarily made because Sergeant Poole made an offer to him in exchange for the statement in which defendant would not implicate his coarrestee and the police would not confiscate the borrowed car or go to the car owner's house to search for more contraband and that he would get probation.
In State v. Labostrie, 96-2003, pp. 4-5 (La.App. 4th Cir. 11/19/97), 702 So.2d 1194, 1197, this court stated:
The State has the burden to prove, beyond a reasonable doubt, that a statement made by a defendant was freely and voluntarily given and was not the product of threats, fear, intimidation, coercion, or physical abuse. State v. Seward, 509 So.2d 413 (La.1987); State v. Bourque, 622 So.2d 198 (La.1993). Thus, the State must prove that the accused was advised of his/her Miranda rights and voluntarily waived these rights in order to establish the admissibility of a statement made during custodial interrogation. State v. Brooks, 505 So.2d 714 (La.1987), cert. denied Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Daliet, 557 So.2d 283 (La.App. 4th Cir. 1990). A waiver of Miranda rights need not be explicit but may be inferred from the actions and words of the accused; however, an express written or oral waiver of rights is strong proof of the validity of the waiver. North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); State v. Harvill, 403 So.2d 706 (La.1981). Whether a statement was voluntary is a question of fact; thus, the trial judge's ruling, based on conclusions of credibility and the weight of the testimony, is entitled to great deference and will not be disturbed on appeal unless there is no evidence to support the ruling. State v. Parker, 96-1852, pp. 12-13 (La.App. 4th Cir. 6/18/97), 696 So.2d 599, 606.
At the hearing on the motion to suppress, Sergeant Poole testified that defendant was advised of his rights and indicated that he did not wish to waive them; but, he further testified that after defendant was taken to the police station, defendant stated that Duckett did not have anything to do with the offense. Poole stated that he again asked defendant if he wished to make a statement and that defendant said that he would. Defendant signed a waiver of rights form and gave a statement that was transcribed by Officer Mitchell. At the conclusion of the statement, defendant denied being forced into or promised anything for making the statement. Although defendant testified at the suppression hearing, he gave no testimony concerning the circumstances surrounding his giving the statement.
We do not find that the trial court erred in denying the motion to suppress the confession. The evidence presented shows that the statement was freely and voluntarily given and was not the product of any promises or coercion. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 2
In his second pro se assignment of error, defendant complains that the trial court erred in denying his motion for new trial. He argues that Sergeant Poole committed perjury when he testified that he called for assistance because there was no record of Poole calling for back-up on the day in question. He also argues that the police lied when they said that the person they arrested along with defendant was Michael Duckett when the person was actually Glenn Metz, Jr.
La.C.Cr.P. art. 851 provides:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion *101 shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment;
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
When a motion for new trial is based on newly discovered evidence, the defendant must show, among other things, that notwithstanding the exercise of reasonable diligence, the new evidence was not discovered before or during trial. La. C.Cr.P. art. 854(1). Additionally, the defendant must show that the evidence is material to issues at trial and that the evidence is of such a nature that it would have probably produced a different verdict. State v. Metoyer, 97-2266 (La.App. 4 Cir. 10/7/98), 720 So.2d 148, writ denied, 98-2805 (La.4/23/99), 740 So.2d 648. Newly discovered evidence affecting only a witness' credibility ordinarily will not support a motion for new trial because such new evidence, which is merely cumulative or impeaching, is not an adequate basis for granting a new trial. State v. Cavalier, 96-3052, 97-0103 (La.10/31/97), 701 So.2d 949. However, the court possesses the discretion to grant a new trial when the witness' testimony is essentially uncorroborated and dispositive of the question of guilt or innocence and when it appears that had the impeaching evidence been introduced, it is likely that the jury would have reached a different result. Id. In making this determination, the court may assume that the jury would have known that the witness lied about the matter. Id.
At the hearing on the motion for new trial, defense counsel stated that the only thing that he had been able to confirm, when he listened to the police radio tapes, was that the officers seemed to have lied when they said that they called a back-up car. He further stated that the defense would have been better able to argue to the jury that the tapes did not back up the officers' claims. Also, even though one of the grounds asserted in the motion for new trial was that Michael Duckett was really an informer named Glenn Metz, defense counsel did not assert this particular claim at the motion hearing. He simply argued that the testimony of the officers concerning the release of Duckett was suspect.
We do not find that the trial court erred in denying the motion for new trial. Even if the officers lied about calling for backup, it does not appear that this impeachment evidence would have led to a different verdict because it related to an issue collateral to guilt or innocence. As to the allegation that Michael Duckett was really Glenn Metz, it appears that defense counsel must have failed to find any evidence to support this allegation or else it would have been set forth at the hearing on the motion for new trial. This assignment of error is without merit.
Finally, although not formally presented as a separate assignment of error, the defendant in his pro se brief includes an argument about sufficiency of the evidence in his assignment of error regarding the motion for new trial. When assessing the *102 sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Rosiere, 488 So.2d 965, 968 (La.1986); State v. Jones, 537 So.2d 1244 (La.App. 4 Cir.1989). The trier of fact's credibility determination will not be disturbed on appeal unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938 (La.1984).
Here, the defendant argues that conflicts and inconsistencies in the testimony of Sergeant Poole and Detective Brunet support the reversal of his conviction on sufficiency grounds. The jury heard the testimony of these two witnesses and found them credible. This credibility determination was not clearly contrary to the evidence. We find that the evidence presented was sufficient to support defendant's conviction. This assignment of error is without merit.
For the reasons stated above, we affirm the defendant's conviction. The defendant's sentence is vacated and this case is remanded for resentencing after a determination of whether the ten year mandatory minimum sentence would be excessive under Dorthey.
CONVICTION AFFIRMED; SENTENCE VACATED; CASE REMANDED FOR RESENTENCING.
NOTES
[1] Also, La. R.S. 40:967(G) provides that with respect to any person to whom the provisions of Section F apply, the sentence shall not be suspended and the defendant shall not be eligible for parole or probation prior to serving the minimum sentence.